# In the United States Court of Federal Claims

No. 20-755 C

(Filed: June 22, 2022)

```
* * * * * * * * * * * * * * * * *  *
                                    *
JOSEPH T. LYON,                     *
                                    *
                                    *
                Plaintiff,          *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant.          *
                                    *
* * * * * * * * * * * * * * * * *  *
```

## OPINION AND ORDER

*Scott W. MacKay*, Law Offices of Scott W. MacKay, LLC, of Hebron, NH, for Plaintiff.

*William P. Rayel*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Deborah A. Bynum*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Acting Assistant Attorney General, all of Washington, D.C., for Defendant, and *Bernard E. Doyle*, Attorney Advisor, Office of Chief Counsel, National Guard Bureau, of Arlington, VA, of counsel.

**SOMERS**, Judge.

Plaintiff, Joseph Lyon, filed a complaint in this Court challenging the Army Board for Correction of Military Records' ("ABCMR" or "Board") denial of his application to correct his military record. Plaintiff requested that the Board correct his record to reflect that he was retired pursuant to either 10 U.S.C. § 7311 (twenty or more years of service) or 10 U.S.C. §§ 1201 or 1204 (disability retirement). In response, the government moved to dismiss counts I and III of Plaintiff's complaint for lack of subject matter jurisdiction and requested that the Court remand count II to the Board. The government's motions have been fully briefed, and the Court held oral argument on the motions. For the reasons explained below, the Court grants the government's motion to dismiss count I, denies its motion to remand count II without prejudice, and reserves ruling on its motion to dismiss count III. In addition, the Court denies Plaintiff's motion to amend count I of his amended complaint.

## BACKGROUND

A.  **Factual History**

Plaintiff began his military service on November 27, 1985, in the Mississippi Army National Guard. ECF No. 18 ¶ 6 ("Am. Compl."). Following completion of Officer Candidate School, he transferred to the Florida National Guard. *Id.* As a member of the National Guard, Plaintiff has served on active duty multiple times, including three combat deployments. *Id.* During his deployment to Iraq in 2003, an improvised explosive device detonation injured Plaintiff, but he declined treatment for injuries sustained as a result of the explosion for fear of losing his command. *Id.* ¶ 8. Despite his injury, Plaintiff continued to serve in the military, including on full-time National Guard duty in the Active Guard/Reserve ("AGR") with an active service commitment term from December 24, 2010, to June 23, 2016. *Id.* ¶ 13.

On April 5, 2013, Plaintiff was arrested on, and subsequently pled no contest to, charges related to the possession of child pornography. *Id.* ¶ 10. Three days after his arrest, Plaintiff attempted suicide and was involuntarily committed to Emerald Coast Behavioral Health Hospital in Panama City, Florida for treatment. *Id.* ¶ 11; ECF No. 22-1 at 39 ("Pl.'s Appx."). Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") on May 25, 2013, as a result of his combat deployments. Am. Compl. ¶ 11.

While Plaintiff was in outpatient therapy, Col. Michael A. Canzoneri, acting on behalf of Plaintiff's squadron commander, requested withdrawal of Plaintiff's federal recognition on May 10, 2013.[1] *Id.* ¶ 14. On May 15, 2013, Col. Canzoneri told Plaintiff that he should request release from active duty. *Id.* ¶ 12. Plaintiff expressed his desire to stay on active duty while he completed his behavioral health and PTSD treatments, but he was told that the National Guard had "everything it needed to cut [him] from the books very quickly." *Id.* Plaintiff submitted his request for release from active duty the same day, effective May 30, 2013. *Id.* ¶ 13. Because Plaintiff's active service was originally set to end on June 23, 2016, the release shortened his active service commitment by about three years. *Id.* at 7–9.

On June 10, 2013, Plaintiff was informed by written memorandum that proceedings were underway to withdraw his federal recognition under National Guard Regulation ("NGR") 635-101. *Id.* ¶ 14. Enclosed with the memorandum was an election form that presented Plaintiff with three options: "resign as an officer of the National Guard and as a Reserve Officer of the Army in lieu of proceedings for withdrawal of Federal recognition; appear at a hearing before a board of officers; or transfer to the Retired Service, if eligible." *Id.* Plaintiff alleges that the election form he completed is "replete with scribbled cross-outs, initials, and handwritten annotations at

---

[1] Withdrawal of federal recognition is significant in that it is "tantamount to separation from the military." Lt. Col. Conrad, *Regulatory Problem for Federal Withdrawal of Recognition Boards is Resolved*, 1997-JUL ARMY LAW. 33, 33 n.52. Moreover, federal recognition determines the right of a National Guardsman to receive federal pay, allowances, and a federal commission in the United States National Guard; therefore, withdrawal of federal recognition strips a Guardsman of those entitlements. *See generally* Dwight Stirling & Corey Lovato, *With All Due Respect Mr. President, We're Not Going to Follow That Order: How and Why States Decide Which Federal Military Rules that Apply to State National Guard Personnel*, 22 TEX. REV. L. & POL. 95, 105–06 (2017).

both the retirement and resignation options" that indicate his confusion about the process and, therefore, a lack of voluntariness surrounding his decision. *Id.* ¶ 15. However, Plaintiff subsequently signed, without modification, a memorandum memorializing his request to resign. *Id.* Plaintiff's resignation and separation as an officer of the Army National Guard and Reserve of the Army with an other than honorable discharge became effective on October 7, 2013. *Id.* ¶ 16.

Plaintiff alleges that had he known proceedings were already underway to withdraw his federal recognition when he made his election to resign, he would not have requested release from active duty. *Id.* ¶ 12. He also alleges that he was not informed that the National Guard was required to conduct a formal line-of-duty investigation before releasing him from the AGR, that he might be eligible for the Retired Reserves, or that his discharge could be designated as under other than honorable conditions. *Id.* at 9–11; *see also* NGR 600-5.

**B.     Procedural History**

    **1.   First ABCMR Decision**

About five months after his discharge, Plaintiff contacted the Florida National Guard Inspector General to allege that his removal from AGR status and withdrawal of federal recognition did not comply with National Guard and Army regulations. Am. Compl. ¶ 17. The Inspector General issued a report on November 4, 2014, which found that the Florida Army National Guard violated multiple regulations, including regulations that required: (1) a formal line-of-duty investigation into Plaintiff's suicide attempt; (2) withholding the withdrawal of recognition until Plaintiff was medically profiled; and (3) processing Plaintiff for administrative separation while simultaneously conducting a physical disability evaluation. *Id.* ¶ 18. Based on these findings, Plaintiff filed an application with the ABCMR seeking restoration of federal recognition, restoration of active duty status with full back pay for the duration of his erroneous administrative separation, and conversion of his separation to a medical or administrative retirement with an honorable discharge due to his PTSD and traumatic brain injury diagnoses. *Id.* ¶ 20.

Following the Inspector General's findings, on June 21, 2016, the ABCMR corrected Plaintiff's records to suspend his resignation, withdrawal of federal recognition, and discharge, pending further review. ECF No. 21-1 at 10 ("Def.'s Appx."). Additionally, the Board placed Plaintiff in an excess leave status effective August 1, 2013, pending "review of the resignation in lieu of elimination for regulatory guidance" and "processing through the Integrated Disability Evaluation System (IDES)." *Id.* Furthermore, the ABCMR ordered a formal line-of-duty investigation into Plaintiff's suicide attempt and that a determination be made as to Plaintiff's eligibility for non-regular retirement "based on qualifying years of creditable service." *Id.* It also ordered that any IDES processing "should consider all available medical records related to the applicant's medical history" and that in the event it was found that Plaintiff should have been separated under IDES, the ABCMR's order would "serve as authority to void his administrative separation and to issue him the appropriate separation . . . with entitlement to all back pay and allowances and/or retirement pay." *Id.* at 10–11. However, if Plaintiff was found fit for further service and could not otherwise retire, "the National Guard Bureau in concert with the Florida

Army National Guard will initiate appropriate action to effect [Plaintiff's] separation and discharge." *Id.* at 11. The Board also noted that Plaintiff "received a diagnosis of PTSD prior to the issuance of the orders amending his active duty separation date. However, there is no evidence of record that shows [Plaintiff] was referred to the IDES and processed simultaneously for administrative separation and physical disability evaluation." *Id.* at 36 (emphasis omitted); *see also id.* at 34–35 (quoting Army Regulation 635-40).

Plaintiff was eventually referred to a Medical Evaluation Board ("MEB") at Fort Gordon, Georgia, which determined that Plaintiff suffered from PTSD, lumbosacral strain, degenerative arthritis, and lumbar spine stenosis and that these conditions did not meet military retention standards. Am. Compl. ¶ 26. Accordingly, the MEB referred Plaintiff to a Physical Evaluation Board ("PEB"). *Id*. The informal PEB was initiated but never completed. *Id.* ¶ 27.[2]

In February 2020, Plaintiff received a letter stating the ABCMR, in light of the reviews conducted in accordance with its 2016 decision, had decided that there was no error or injustice that warranted a change to Plaintiff's resignation status. Pl.'s Appx. at 33. Therefore, "[t]he Board action as described in its 21 June 2016 decision is now final and considered closed." *Id.* On June 23, 2020, Plaintiff filed a complaint in this Court. ECF No. 1. The government subsequently requested that the Court remand Plaintiff's claims to the Board so that it could: (1) "determine and explain whether Plaintiff was unfit for duty because of physical disability at the time of his July 31, 2013 release from active duty"; (2) "address . . . any other issues [Plaintiff] raises in a written submission to the ABCMR"; and (3) "determine and explain whether Plaintiff is entitled to any relief, including correction of records and retirement pay, based upon any errors or injustices found." ECF No. 5 at 8–9. The Court granted the motion and directed the ABCMR to consider the issues the government raised in its motion. *See* ECF No. 8 at 2.

### 2. The ABCMR's Remand Decision

On May 6, 2021, the ABCMR issued its record of proceedings on remand, including a finding that, due to his PTSD, Plaintiff was unfit for active duty when he was released on July 31, 2013. *See* ECF No. 14-1 ("Remand Decision"). However, the Board further determined that no change to Plaintiff's military record was warranted because Plaintiff voluntarily resigned, and the Army's acceptance of that voluntary resignation was appropriate in light of his misconduct. *Id.* at 2.

Following the Remand Decision, Plaintiff amended his complaint in this Court to assert three grounds for relief. Count I seeks a longevity retirement pursuant to 10 U.S.C. § 7311, because, according to Plaintiff, had he not been discharged, he would have accumulated enough service to be eligible for voluntary retirement, Am. Compl. ¶¶ 57–61; count II seeks a disability retirement pursuant to 10 U.S.C. §§ 1201 and 1204, *id.* ¶¶ 62–66; and count III seeks to change

---

[2] However, the ABCMR determined in 2021 that "a preponderance of evidence reflects the applicant was unfit for duty because of PTSD at the time of his 31 July 2013 release from active duty." Remand Decision at 67. The ABCMR has the statutory authority to sit as a competent fitness board in lieu of a PEB. *See Chambers v. United States*, 417 F.3d 1218, 1225 (Fed. Cir. 2005) (stating that a correction board can stand in the place of a retiring board to determine eligibility for disability retirement).

4

Plaintiff's discharge status from other than honorable to honorable, *id.* ¶¶ 67–73. In response to the amended complaint, the government filed a Motion for Partial Dismissal and Motion for a Voluntary Remand and Stay arguing that count I should be dismissed because: (1) 10 U.S.C. § 7311 is not a money-mandating statute; (2) the statute of limitations has run on Plaintiff's claim; and (3) Plaintiff fails to state a claim because it is undisputed that Plaintiff was medically unfit for duty at the date of discharge. *See generally* ECF No. 21 ("Def.'s Mot. Dismiss"). The government further requests that the Court remand count II to the ABCMR so it can specifically address its determination that it was not an error or injustice to accept Plaintiff's "voluntary" resignation. *Id*. at 21. Finally, the government argues that count III of the complaint is outside of the Court's jurisdiction, as it requests equitable relief that is not tied or subordinate to a claim for monetary relief. *Id.* at 19.

## DISCUSSION

### A. Legal Standard

#### 1. Motion to Dismiss

The United States Court of Federal Claims, like all federal courts, is a court of limited jurisdiction. Under the Tucker Act, this Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States . . . ." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States,* 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to state a claim within the Court's jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id*. Stated differently, the plaintiff must state a claim that is based on a provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (citing *United States v. Testan*, 424 U.S. 392, 400 (1976)), and is "reasonably amenable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).

Even if a plaintiff asserts a claim that falls within the Court's jurisdiction, he or she must still present a claim on which the Court can grant relief. "When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor." *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791 (2014) (citations omitted). Granting a motion to dismiss for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 2. Motion to Remand

Rule 52.2 of the Rules of the United States Court of Federal Claims ("RCFC") allows the Court to order remand "of appropriate matters to an administrative or executive body or official." RCFC 52.2(a). Remand is generally advised when the agency's concern is "substantial and legitimate." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). An agency might request a remand without admitting error "because it believes that its original decision was incorrect on the merits and it wishes to change the result." *Id.* at 1028. In such a case, the Court has discretion in deciding if remand is appropriate. *Id.* at 1029. The Court can deny remand if it is frivolous or in bad faith, such as if the motion to remand is filed spontaneously. *See Miss. River Transmission Corp. v. Fed. Energy Regul. Comm'n*, 969 F.2d 1215, 1217 n.2 (D.C. Cir. 1982). Furthermore, Plaintiff's consent is not necessary to remand a case. *Rahman v. United States*, 149 Fed. Cl. 685 (2020) (granting a contested motion to remand).

**B.     Analysis**

### 1. 10 U.S.C. § 7311 Is Not a Money-Mandating Statute

To review, in order to assert a claim within this Court's jurisdiction a plaintiff must "identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). That means the statute in question must be one that is "reasonably amenable to the reading that it mandates a right to recovery in damages." *White Mountain Apache Tribe*, 537 U.S. at 473; *see also Mitchell*, 463 U.S. 206. In addition, even if a statute is money-mandating, a plaintiff must further make a "nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *See Jan's Helicopter Serv. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008). In the instant case, Plaintiff asserts that 10 U.S.C. § 7311 is a money-mandating statute and that he is entitled to retirement pay pursuant thereto. *See* ECF No. 22 at 7–9 ("Pl.'s Opp. Mot. Dismiss"). The Court disagrees.

In relevant part, § 7311 provides that "[t]he Secretary of the Army *may*, upon the officer's request, retire a regular or reserve commissioned officer of the Army who has at least 20 years of service computed under section 7326 of this title, at least 10 years of which have been active service as a commissioned officer." 10 U.S.C. § 7311(a) (emphasis added). The plain language of the statute thus grants the Secretary the *discretion*, upon an officer's request, to retire an officer with twenty years of service of which ten were on active duty as a commissioned officer. In general, statutes that grant an agency substantial discretion over the decision whether or not to compensate an individual are not money-mandating. *See, e.g.*, *Wolfchild v. United States*, 731 F.3d 1280, 1292 (Fed. Cir. 2013) ("We have long recognized that statutes granting officials substantial discretion are not considered money-mandating . . . .") (internal quotations omitted); *Barnick v. United States*, 591 F.3d 1372, 1378 (Fed. Cir. 2010) ("[B]ecause § 204 incapacitation pay beyond the initial six-month period is wholly within the Secretary's discretion under § 204(i)(2), the Court of Federal Claims and this court lack subject matter jurisdiction over Barnick's claim for additional incapacitation pay."); *Doe v. United States*, 100 F.3d 1576, 1582 (Fed. Cir. 2002) ("A statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group."). Accordingly,

because the plain language of § 7311 gives the Secretary substantial discretion, the statute is not money-mandating. Plaintiff endeavors to overcome the plain meaning of the relevant language of § 7311 by attempting to analogize it to the military disability retirement statute at issue in *Fisher v. United States* and *Sawyer v. United States*. That analogy, however, is inapt.

In both *Fisher* and *Sawyer*, the issue was whether there was Tucker Act jurisdiction over military disability retirement claims under 10 U.S.C. § 1201. In relevant part, that statute provides:

> Upon a determination by the Secretary concerned that a member described in subsection (c) [i.e., on active duty] is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay . . . , the Secretary *may* retire the member, with retired pay . . . , *if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)*.

10 U.S.C. § 1201(a) (emphasis added). The *Fisher* court, reaffirming the reasoning of *Sawyer*, held that the military disability retirement statute was money-mandating because "the Secretary has *no discretion* whether to pay out retirement funds once a disability is found qualifying." *Fisher*, 402 F.3d at 1174 (citing *Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed. Cir. 1991)) (emphasis added).

This "no discretion" finding was essential to the Federal Circuit's determination that the military disability retirement statute is money-mandating. As the circuit explained in *Sawyer*,

> The Secretary has *no discretion* whether or not to pay active duty service members, they are statutorily entitled to the pay of their positions until the entitlement is lawfully terminated. And once he finds a disability qualifying, he likewise has *no discretion* whether to pay out retirement funds. *The word "may" in section 1201 does not convey discretion whether or not to pay*, it merely permits the Secretary to terminate a member's active duty early and tap the Treasury for the disability retired pay. Otherwise, at least under the facts we have, the member would remain on active duty. Either way, he would statutorily be entitled to money, unless the disability is not in the line of duty.

*Sawyer*, 930 F.2d at 1580 (internal citations omitted) (emphasis added). The circuit echoed this determination in *Fisher*, finding that even after *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003), *Sawyer* was still correctly decided:

> *Despite the presence of the word "may" in the statute*, in *Sawyer* we determined that *the Secretary has no discretion whether to pay out retirement funds* once a disability is found qualifying. Thus, we held that the statute is money-mandating because *when the requirements of the statute are met*—i.e., when the Secretary determines that a service member is unfit for duty because of a physical disability, and that disability is permanent and stable and is not the result of the member's intentional misconduct or willful neglect—*the member is entitled to compensation*.

7

*Fisher*, 402 F.3d at 1174–75 (internal citations omitted) (emphasis added).

Plaintiff argues that this Court should simply follow *Fisher* and *Sawyer* and find that, like the military disability retirement statute at issue in those cases, § 7311 does not give the Secretary of the Army discretion whether or not to pay. But in *Fisher* and *Sawyer*, the statute was determined to be money-mandating because if the requirements of the statute are met, then the service member is entitled to compensation. That is not the case with § 7311: if the Secretary determines that Plaintiff has met the statutory requirements—twenty years of service, at least ten of which were on active duty as a commissioned officer—it does not mean the Secretary must retire him (and thus provide him with retirement pay). This is the key distinction between the statute at bar and the disability retirement statute at issue in *Fisher* and *Sawyer*: § 7311 conveys substantial discretion to the Army Secretary; § 1201 does not.

Indeed, the plain language of § 7311 gives the Army Secretary the unfettered discretion whether to retire, upon application, any commissioned Army officer who has the necessary years of service. The Federal Circuit confirmed the discretionary nature of this language in *Cedillo v. United States*, in which it held that an analogous Air Force twenty-year retirement statute did not provide a right to retirement benefits. *Cedillo v. United States*, 124 F.3d 1266, 1268 (Fed. Cir. 1997) (analyzing 10 U.S.C. § 8914, currently codified at 10 U.S.C. § 9314,[3] which at the time provided in relevant part that "an enlisted member of the Air Force who has at least 20, but less than 30, years of service computed under section 8925 of this title may, upon his request, be retired"). There the Federal Circuit considered the case of an airman with over twenty, but less than thirty, years of service who requested retirement but whose request was not approved because he was arrested before his effective retirement date. *Id.* at 1267. He was instead discharged based on his conviction. *Id*. In affirming Judge Bruggink's holding that the plaintiff did not have a statutory right to retirement pay, the circuit explicitly stated that "[b]y using the permissive '*may*,' the statute indicates that the decision to grant retirement *is discretionary*. The Court of Federal Claims thus did not err in interpreting section 8914 [(an Air Force analog to § 7311)] and concluding that the Air Force *was not obligated under law* to provide Cedillo with retirement benefits." *Id*. at 1268 (emphasis added).

Although the Federal Circuit did not directly analyze the money-mandating nature of the statute in *Cedillo*, in holding that the decision whether or not to grant retirement was discretionary and not obligated under law, the circuit made clear that in military longevity retirement statutes, like § 7311, "may" really means "may." The circuit has consistently held that statutes that simply authorize, but do not require, the payment of money are not money-mandating. *See, e.g.*, *Adair v. United States*, 648 F.2d 1318, 1322 (Ct. Cl. 1981) ("[A] statute providing for solely discretionary payment of money does not give rise to 'a right to recover money damages from the United States.'") (quoting *Testan*, 424 U.S. at 398); *Roberts v. United States*, 745 F.3d 1158, 1164 (Fed. Cir. 2014) ("One relevant principle drawn from the cases is that a statute (or regulation) providing that money 'may' be paid is not money-mandating if the statute or regulation only authorizes but does not require the payment of money to the class of

---

[3] In relevant part, 10 U.S.C. § 9314 provides that "an enlisted member of the Air Force or the Space Force who has at least 20, but less than 30, years of service computed under section 9325 of this title may, upon his request, be retired."

which the plaintiff claims to be a member, and contemplates that further implementing regulations will be issued defining the circumstances in which money will be paid."). The fact that the circuit did not address the apparently unquestioned money-mandating nature of the statute at issue in *Cedillo* does not undercut the application of its holding to the question of whether § 7311 is a money-manding source of law. *See, e.g.*, *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("Even as to our own judicial power or jurisdiction, this Court has followed the lead of Mr. Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*."); *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed."). Simply put, § 7311 does not compel the Army Secretary to retire (and thus give retirement pay to) an officer if the requirements (twenty years of service and ten on active duty as a commissioned officer) are met. Rather, as in *Cedillo*, the Secretary has discretion to refuse to retire an officer who is qualified to retire under the statute. The statute is thus not money-mandating.

Plaintiff further attempts to get around the discretionary language in § 7311 by arguing that if § 7311 is not itself money-mandating, then it is § 7311 in combination with 10 U.S.C. § 7329 that creates the money-mandate. Plaintiff cites *Piotrowski v. United States*, No. 13–760 C, 2014 WL 7476033 (Dec. 30, 2014), and *Johnson v. United States*, 157 Fed. Cl. 8 (2021), in support of this argument. However, if this argument were correct, the Federal Circuit's opinion in *Fisher* would make little sense. The *Fisher* court went to great length to discuss why the use of "may" in 10 U.S.C. § 1201 did not mean that the statute at issue was not money-mandating. This entire discussion in *Fisher* would be irrelevant if Plaintiff's argument were correct. The circuit would have simply stated, as Plaintiff urges here, that § 1201 is money-mandating because if the relevant Secretary approves a retirement request under § 1201, the service member is entitled to retirement pay as calculated under 10 U.S.C. § 1401. But that is not what the circuit did in *Fisher*. Rather, in *Fisher*, the circuit explained that § 1201 is money-mandating because once the relevant Secretary finds a disability qualifying under § 1201, that Secretary has *no discretion* whether to pay out retirement funds and thus § 1201 is money-mandating. It is not simply the entitlement (once a service member's retirement is approved) to retirement pay as calculated under § 1401 that makes § 1201 money-mandating. It is clearly, as articulated by the *Fisher* court, the lack of discretion contained in § 1201 that was the deciding factor. In short, if Plaintiff's argument were correct, the *Fisher* court never would have discussed the discretionary nature of § 1201 because it would have been completely irrelevant to its decision.

Accordingly, with regard to § 7311, it is not enough that a soldier who is retired pursuant to § 7311 is entitled to retired pay pursuant to § 7329. Such a reading would be inconsistent with *Fisher*. Because, even if the Army Secretary determines that a soldier has the necessary years of service, the Secretary still has the discretion not to retire that soldier; thus, § 7311 is not money-mandating. *See Cedillo*, 124 F.3d at 1268. Therefore, count I of Plaintiff's complaint is dismissed for lack of subject matter jurisdiction.

### 2. Even if the Court Had Jurisdiction Over Count I, It Would Nonetheless Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted

Even assuming that the Court had subject matter jurisdiction to hear the first count of Plaintiff's complaint, the Court is nonetheless required to dismiss this count under RCFC 12(b)(6) because as Plaintiff admits, and the ABCMR determined, Plaintiff was medically unfit for duty during the period of time for which he seeks the necessary amount of constructive active service credit to be eligible for longevity retirement. Am. Compl. ¶ 23 ("[A]t the time of his illegal release from active duty on July 31, 2013, and his illegal separation from service effective October 7, 2013, and continuously thereafter, Mr. Lyon was unfit for duty because of a physical disability as he suffered from unfitting PTSD and an unfitting back condition."); *id*. ¶ 38 ("The ABCMR determined that Mr. Lyon was unfit for duty due to his PTSD at the time he was released from active duty on July 31, 2013."). Without this active service credit, Plaintiff does not have sufficient service to qualify for retirement under 10 U.S.C. § 7311. *Id.* ¶ 6 ("Mr. Lyon served on active duty status on repeated occasions . . . thereby accumulating as of November 30, 2013, over 17 years of creditable Federal service."). Accordingly, even if the first count of Plaintiff's complaint was brought pursuant to a money-mandating statue, the Court would be forced to dismiss it for failure to state a claim.

As stated above, in his complaint, Plaintiff alleges that he only has approximately seventeen of the twenty years of service required to be eligible for a longevity retirement pursuant to § 7311. In order to make up for this shortfall, Plaintiff invokes the constructive service doctrine in an attempt to obtain service credit for the period from August 1, 2013, through June 23, 2016—a period during which he was not on active service due to his allegedly illegal release from active service. *See id.* ¶¶ 59–61. The problem with Plaintiff's constructive service claim is that—leaving aside the question of whether his release from active service was illegal—Plaintiff was admittedly unfit for duty during the time period for which he seeks constructive service credit.

Pursuant to the constructive service doctrine, "military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation." *Christian v. United States*, 337 F.3d 1338, 1347 (Fed. Cir. 2003). The purpose of the doctrine is "to return successful plaintiffs to the position that they would have occupied but for their illegal release from duty." *Barnick*, 591 F.3d at 1379 (internal quotations omitted). However, in order to receive constructive service credit for the period after the allegedly illegal withdraw of his federal recognition, Plaintiff must demonstrate that he was "ready, willing [,] and able" to serve during the period for which he seeks credit. *Groves v. United States*, 47 F.3d 1140, 1146 (Fed. Cir. 1995). In other words, Plaintiff can only invoke the constructive service doctrine to obtain the required missing years of service if he would have remained on active duty "absent the improper action or discharge," and "would have been able to continue on active duty." *Barnick*, 591 F.3d at 1379–80. In cases in which the service member was medically unfit for duty at the time of his or her release from active service, constructive active service credit is inappropriate:

> In each case applying the constructive service doctrine cited by Barnick, the plaintiff was on extended active duty and *able to continue on active duty* when the improper action leading to his separation from the service occurred. As such, absent the improper action or discharge, the service member would have remained in the military on active duty.

10

*Id*. at 1379 (emphasis added).

Plaintiff readily admits that he was unfit for service at the time of his allegedly illegal separation.  *See* Am. Compl. ¶ 23 ("[A]t the time of his illegal release from active duty on July 31, 2013, and his illegal separation from service effective October 7, 2013, and continuously thereafter, Mr. Lyon was unfit for duty because of a physical disability as he suffered from unfitting PTSD and an unfitting back condition.").  Furthermore, the ABCMR concurred with Plaintiff's admission.  *See* Remand Decision at 67 ("[A] preponderance of evidence reflects the applicant was unfit for duty because of PTSD at the time of his 31 July 2013 release from active duty."); *see also* Compl. ¶ 38 ("The ABCMR determined that Mr. Lyon was unfit for duty due to his PTSD at the time he was released from active duty on July 31, 2013.").  Thus, according to both Plaintiff and the ABCMR, Plaintiff was unfit for military service at the time of his allegedly illegal separation.  Therefore, Plaintiff would not have remained on active duty had he not been separated and cannot invoke the constructive service doctrine to obtain the necessary years of service to be eligible for a longevity retirement under § 7311.  Accordingly, even accepting the facts pleaded in the complaint as true, Plaintiff does not have the required service for a longevity retirement and thus could not state a claim upon which relief can be granted even if § 7311 was a money-mandating statute.[4]

### 3. Remand to the ABCMR Is Not Warranted

As to count II of the complaint, the government requests that the Court once again remand this case to the ABCMR to address "[Plaintiff's] arguments regarding voluntariness," asserting that the Board did not adequately consider these arguments and that guidance on this point from the Board might expedite this litigation.  *See* Def.'s Mot. Dismiss at 22.  The Court does not see this as a substantial or legitimate concern sufficient to justify another remand; therefore, the government's motion to remand count II is denied.

In *SKF USA*, the Federal Circuit handed down the predominant guidance on how courts should address requests for voluntary remand.  The circuit stated that when a court reviews an

---

[4] Plaintiff requests leave to amend count I of his complaint to state a claim for a longevity retirement "based on the actual days of creditable active service he accrued . . . as a result of the partial relief granted by the ABCMR on June 21, 2016, placing Mr. Lyon in an indefinite excess leave status, which caused him to meet the 20-year requirement of 10 U.S.C. § 7311" if the Court finds that count I fails to state a claim.  Pl.'s Opp. Mot. Dismiss at 27–28.  This amendment, however, would be futile as: (1) § 7311 is not a money-mandating statute, *see* discussion *supra* Section B.1; (2) even if § 7311 was money-mandating, Plaintiff's service in an excess leave capacity was not "active duty, as defined in section 101(d)(1) of Title 10" because that section defines active duty as "full-time duty in the active military service of the United States [and] . . . . [s]uch term does not include full-time National Guard duty." ECF No. 25 at 9.  Therefore, Plaintiff's period of "excess leave" was not "active duty" because he was not required to perform "full-time" military duty during this time; and (3) even this service could be counted as active duty service, it does not change the fact that Plaintiff was unfit for duty and, therefore, could not gain additional active duty time while unfit to serve.  Accordingly, Plaintiff's motion to amend his amended complaint is denied.  *Meyer Grp., Ltd. v. United States*, 115 Fed. Cl. 645, 650 (2014) (explaining that a motion to amend is futile when the proposed amended complaint would not survive a motion to dismiss).

agency's action, the agency will likely take one of five stances: (1) defend its decision based on the agency's prior reasoning; (2) defend the decision on other grounds; (3) seek a remand to reconsider its decision based on "events outside the agency's control," such as a new court decision or legislation; (4) seek a remand "to reconsider its previous position" without admitting error; or (5) admit error in the decision on the merits and seek a remand with the desire to change the result. *SKF USA Inc.*, 254 F.3d at 1027–29. Here, it appears that the government seeks remand pursuant to the fourth category: "to reconsider its previous position" without admitting error. The *SKF USA* court envisioned such remands would occur in cases in which the agency might wish "to consider further the governing statute, or the procedures that were followed. [The agency] might simply state that it had doubts about the correctness of its decision or that decision's relationship to the agency's other policies." *Id.* at 1029. Although *SKF USA* recognizes that the Court has discretion in remanding a matter, it goes on to say that "if the agency's concern is substantial and legitimate, a remand is usually appropriate." *Id.*

While there is no binding definition of "substantial and legitimate," other judges of this Court have utilized the standard articulated in *Ad Hoc Shrimp Trade Action Committee v. United States*. The test deduced from that opinion is that "[a]n agency's concerns are substantial and legitimate where (1) the agency provides a compelling justification for its remand request; (2) the need for finality does not outweigh the justification for voluntary remand presented by the agency; and (3) the scope of the agency's remand request is appropriate." *See Keltner v. United States*, 148 Fed. Cl. 552, 564 (2020) (citing *Ad Hoc Shrimp Trade Action Comm. v. United States*, 882 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013) (internal quotations omitted)). Even though it appears that the tendency among courts is to grant motions for remand, remand is not appropriate in all cases and the Court should only grant a remand request after serious consideration. *See Rahman*, 149 Fed. Cl. at 690 (stating that motions for voluntary remand "should be treated as with any other motion affecting the substantial rights of the plaintiff, by subjecting the government's position to careful analysis to ensure that the motion is properly supported and justified" and that the judge considering them should engage with the record).

Turning to the case at bar, the government asks the Court to remand count II to the ABCMR so that the Board can address Plaintiff's argument that his resignation was involuntary because, according to the government, "the ABCMR did not specifically address" that argument. Def.'s Mot. Dismiss at 21. The government does not admit error but simply asserts that the Board's "failure to address [Plaintiff's] arguments regarding voluntariness raises substantial and legitimate concerns about whether those arguments were adequately considered." *Id.* at 22; *see id.* at 21. The government, however, asserts nothing (besides citing the correct legal standard for motions to remand) that is a substantial and legitimate concern justifying remand. In short, the government's remand request does not meet any of the three factors set forth in *Ad Hoc Shrimp Trade Action Committee*.

To begin with, the government's assertion that the ABCMR did not specifically address the voluntariness of Plaintiff's resignation appears to be incorrect as a factual matter. *See* Remand Decision at 72; *see also* Pl.'s Appx. at 58–62 (arguing Plaintiff's request for release was involuntary because he was subject to coercion and reliance on false information as indicated by the election form with multiple markings beside each option on the form); Remand Decision at 8 ("[A]PPLICANT'S SUPPORTING DOCUMENTS CONSIDERED BY THE BOARD . . .

Counsel's brief, dated 9 November 2020"). *Cf. id.* at 20 (noting the multiple markings on Plaintiff's election form). Moreover, if the government is correct that the Board did not "specifically" address Plaintiff's argument regarding voluntariness, then the Board did not "specifically" address *any* of Plaintiff's arguments. That is to say, the Board's decision spends as much time on voluntariness as it does on Plaintiff's disability claim and Plaintiff's claim that there were irregularities in his discharge processing. Although the Board's record of proceedings is seventy-eight pages long, if one examines this record, he or she will quickly realize that the record itself contains roughly *one page* of the Board actually addressing Plaintiff's claims. *See* Remand Decision at 67–68. The rest of the seventy-eight pages contain a nearly verbatim reproduction of Plaintiff's filing with the Board and this Court's remand order, along with several pages worth of "references." *See generally id*. at 1–67, 69–78. In other words, if the Board's three sentences on voluntariness do not "specifically" address voluntariness, then its five sentences on why Plaintiff's resignation in lieu of withdrawal of federal recognition should be accepted rather than medically retiring him did not address that claim either. But the government has not requested a remand of that claim. Nor does the government request a remand based on the Board's four sentence long explanation of why an upgrade in Plaintiff's discharge is unwarranted. Simply put, the request for a remand to allow the Board to address voluntariness is no more or less warranted than a remand of Plaintiff's entire claim. Yet, the government only seeks remand of this one claim—a claim the Board seems to have already "specifically" addressed:

> the Board found that *the applicant voluntarily requested to resign* and was discharged in lieu of the withdrawal of Federal Recognition. As previously noted, the Board determined *acceptance of the resignation was the appropriate course of action* in light of the applicant's admitted misconduct. The greater weight of the evidence reflects *no irregularities in the process that prejudiced a substantial right of the applicant*.

Remand Decision at 68 (emphasis added).

      Did the Court expect a more thorough written explanation of the analysis of all of Plaintiff's claims, including his voluntariness claim? Of course. But this claim has already been before the Board more than once and it is not clear to the Court what exactly "specifically" addressing Plaintiff's voluntariness claim even means. The government's remand request would be on better footing if, for example, it had admitted that there was an error or potential error. But instead, the government has failed to give any indication that the ABCMR wishes to reconsider its position, asserting that there was no error *per se* in seeking to have the Board further expound on an issue that was already before it. Although the government is not required to admit error in requesting a remand, *SKF USA Inc.*, 254 F.3d at 1029, "what really matters when an agency requests a voluntary remand . . . is whether the agency is *genuinely* willing to revisit the challenged determination." *XP Vehicles, Inc v. U.S. Dep't of Energy*, 156 F. Supp. 3d 185, 189 (D.D.C. 2016) (citing *SKF*, 254 F.3d at 1029) (emphasis in original).

      Yet the government has given no indication that suddenly, on what would be the second remand to the Board from this Court and the fourth time Plaintiff's claims have been before the Board, it is genuinely willing to revisit a determination that has already been before it multiple

times. This is partially indicated by the lack of statements from the Board that give an indication that the Board will actually *revisit* the voluntariness issue on remand, which might have sufficed to give the Court assurance that there was a substantial and legitimate concern. *See Owens & Minor Distrib., Inc. v. United States*, 154 Fed. Cl. 349, 354 (2021) (denying a motion to remand when the government "failed to support its motion with, at the least, statements from the agency representatives"). Rather, it appears that the government is simply seeking an opportunity to clarify an issue that it previously considered. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 388 (D.C. Cir. 2017) (expressing that an agency requesting a remand needs to, at a minimum, express intent to reconsider, review, or somehow modify its original decision). While remand may be appropriate in a case in which a corrections board would be considering a matter in the "first instance" on remand, that is not the case here. *Rahman*, 149 Fed. Cl. at 690. Plaintiff's argument regarding voluntariness of his resignation has been before the Board before. *See Pl.*'s Appx. at 58–62 (arguing Plaintiff's request for release was involuntary because he was subject to coercion and reliance on false information as indicated by the election form with multiple markings beside each option on the form). Indeed, Plaintiff's argument on voluntariness is reproduced verbatim in the ABCMR's record of proceedings. *Compare* Remand Decision at 3–8 *with* Pl.'s Appx. 33–93. In sum, there is no need to wait another sixth months for the Board to decide something that was already before it just last year.

Moreover, the need for finality is overwhelming in this case. If the Court were to remand this case again, it would be the Board's fourth "consideration" of the matter. *See* Pl.'s Appx. at 2–31 (2016 decision); *id.* at 31–32 (2020 letter closing Plaintiff's ABCMR case)[5]; Remand Decision. Plaintiff should not have to beat down the ABCMR's door yet again to seek relief, especially considering that the ABCMR has issued at best confusing and at worst contradictory rulings. *Compare* Pl.'s Appx. at 3 (suspending resignation pending reviews, processing through IDES, and a line of duty investigation) *with id.* at 31 ("Reviews conducted in accordance with the approved Board recommendation found no error or injustice that warrant a change to the applicant's separation. The Board action as described in its 21 June 2016 decision is now final and considered closed.") *and* Remand Decision at 2 ("While the application *should have been simultaneously processed* for administrative separation and disability separation, I find sufficient evidence exists indicating that the applicant actually did engage in misconduct and that his behavior warranted the Army's decision to accept his resignation . . . .") (emphasis added). This is especially true given that it does not appear to the Court that it will need to address the issue of voluntariness in order to decide this matter.

---

[5] Concerning the Board's February 2020 "decision," it appears that this was not Board action but rather Army Human Resources Command unilateral action to close Plaintiff's case. *See* Pl.'s Appx. at 31–32. 10 U.S.C. § 1552(a)(1) provides that "[t]he Secretary of a military department may correct any military record . . . when . . . it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through *boards of civilians* . . . ." 10 U.S.C. § 1552(a)(1) (emphasis added). It is not apparent to the Court that the exception in 10 U.S.C. § 1552(a)(2) applies or that a singular signatory constitutes a "board[] of civilians." *Id.* This Court's predecessor found a similar abdication of statutory authority contrary to law when the Board did not base its conclusion on the record before it, but rather relied on the opinion of an Executive Secretary of the Air Force Personnel Council. *See Friedman v. United States*, 141 Ct. Cl. 239, 248, 251–52 (1958). The Court does not need to rule (at least not at this point in time) on the legality of the Board's February 2020 decision.

Although the undersigned does not want to get too far ahead of the issues considering that cross-motions for judgment on the administrative record are not currently pending and the formal administrative record has not yet been filed (however, most of the documents that will likely comprise the administrative record have been filed by the parties), it does not appear that the issue of voluntariness will be outcome-determinative in this case.  This is because it appears apparent that an error occurred in the Board's consideration (or what is probably more appropriately termed a reconsideration) of Plaintiff's entitlement to a disability retirement.  The Court will withhold judgment on this apparent error until it has an administrative record and cross-motions pending before it; however, it would seem that the true remaining issue in this case is whether the Remand Decision is consistent with the Board's 2016 decision, and, more importantly, whether this potential inconsistency in the Remand Decision resulted in an unfavorable correction of Plaintiff's military record.

As the Court of Claims explained decades ago, military correction boards "were established for the purpose only of reviewing, on application of the military personnel, a military record to correct errors or injustices against such personnel and *not to review and reverse decisions of other established boards favorable to such personnel*."  *Friedman v. United States*, 141 Ct. Cl. 239, 251-52 (1958) (emphasis added).  Stated differently, "[i]t is clear the statute only confers on the Secretary [acting through correction boards] the power to correct records *in favor of a serviceman and never against him*."  *Doyle v. United States*, 220 Ct. Cl. 285, 311 (1979) (emphasis added); *see also Wolfe v. Marsh*, 835 F.2d 354, 358 (D.C. Cir. 1987) (citing *Doyle*, 220 Ct. Cl. 285) ("The Correction Board can only exercise its discretion for the benefit of the individual member.").  Accordingly, if the 2016 Board proceedings corrected Plaintiff's military record in a manner that was favorable to Plaintiff, then the Board comprised in 2021 to consider the remand of Plaintiff's claims cannot then re-correct his record in a less favorable manner.  Yet, that appears (without the benefit of briefing and the filing of the formal administrative record) to be exactly what happened here.

The Court will wait for briefing on cross-motions for judgment on the administrative record to determine the issue, but rather than remanding this case to allow the ABCMR to "specifically" address the issues of voluntariness, the Court simply points out what appears to be a correction of Plaintiff's record in 2016.  It appears that on the first two pages of the Board's 2016 decision, it orders a determination of whether Plaintiff "should have been discharged or retired by reason of physical disability" and, if it was so determined, "these proceedings [the 2016 ABCMR proceedings] will serve as the authority to void his administrative separation and to issue him the appropriate separation retroactive to his original separation date, with entitlement to all back pay and allowances and/or retired pay, less any entitlements already received."  Pl.'s Appx. at 3–4.  This correction would then appear to become a favorable correction when, on remand in 2021, the Board recommended that "all Department of the Army records of the individual concerned be corrected to show that he was unfit for duty because of PTSD at the time of his 31 July 2013 release from active duty" and the Secretary approved that recommendation.  Remand Decision at 69.  However, despite the Board's 2016 correction, the Board determined that "a greater weight of the evidence supported the course of action to eliminate the applicant by accepting his resignation rather than medically retiring him for

physical disability." *Id.* at 68.  It would seem that in light of the 2016 decision, this was a determination the Board was not permitted to make.

Facing analogous circumstances to the one at bar, the Court of Claims heard the case of a serviceman who applied for a correction of his military record when a PEB deemed him incapable of performing full military duty and rated him as 30% disabled.  *Friedman*, 141 Ct. Cl. at 246–47.  After the PEB ruling, a subsequent corrections board overrode the PEB's conclusions based on an opinion from the Executive Secretary of the Air Force Personnel Council.  *Id.* at 248.  The Court ultimately found the corrections board acted contrary to law not only because the Executive Secretary did not have the power to override the PEB, but also because the corrections board reversed a favorable decision for the serviceman.  In so finding, the Court stated:

> when, upon the erroneous advice of the Army officials, plaintiff took his case to the Correction Board in 1953, with findings and decision favorable to him, the only error or injustice in his record, so far as the Correction Board was concerned, was the absence of secretarial approval of the 1950 Physical Evaluation Board findings and recommendations that plaintiff had been permanently disabled as a result of active service and should be retired for physical disability with pay.  When plaintiff's case was considered by the Correction Board in 1954, we think that Board was without authority to review and reverse the findings and conclusions of the 1950 Physical Evaluation Board which, as shown, were *entirely and unanimously in plaintiff's favor*.

*Friedman*, 141 Ct. Cl. at 253–54 (emphasis added).  The instant case looks in many respects to be analogous to *Friedman*.  The Court, however, is not in a position to rule on this question at this point in time.  But the Court will not delay further proceedings in this case to give the Board a fourth opportunity to consider Plaintiff's claims.  If, at a later date and after further proceedings before this Court, it appears apparent that additional input from the Board is warranted, the Court will remand the case at that point in time.  Accordingly, the government's motion to remand is denied without prejudice.

### 4. Ruling on Count III Is Inappropriate at This Time

The third count of Plaintiff's complaint seeks an honorable discharge, *see* Am. Compl. ¶¶ 67–73, which the government moves to dismiss for lack of jurisdiction, as the request for an honorable discharge is an "independent claim for equitable relief" outside of the Court's jurisdiction.  Def.'s Mot. Dismiss at 21.  The Court notes that an honorable discharge might be a form of equitable relief that is incident and collateral to judgment on count II, which the Court may be empowered to grant.  *See James v. Caldera*, 159 F.3d 573, 580-81 (Fed. Cir. 1998) (finding that a bar to reenlistment is not incident of and collateral to monetary damages because there was no need to consider the bar to reenlistment in deciding the back pay claim); *see also* Def.'s Mot. Dismiss at 21 n.3 (citing Army Regulation 635-40, ¶ E-12(a) (Mar. 20, 2012) (A8)) ("Moreover, [Plaintiff] would automatically be entitled to an honorable discharge if he were granted the disability retirement he requests in count II . . . regardless of whether the allegations in count III have merit.").  Because this order does not dispose of count II, the Court reserves

ruling on the government's motion to dismiss count III for lack of jurisdiction until such time as the merits of count II are before it.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the government's motion to dismiss as to count I, **DENIES** the government's motion to remand as to count II without prejudice, and **RESERVES** ruling on the motion to dismiss as to count III. It also **DENIES** Plaintiff's motion to amend count I of his amended complaint.

On or before **July 15, 2022**, the parties **SHALL** file a joint status report proposing a schedule for the filing of the administrative record and for cross-motions for judgment thereon.

**IT IS SO ORDERED**.

                                                s/ Zachary N. Somers
                                                ZACHARY N. SOMERS
                                                Judge