# In the United States Court of Federal Claims

No. 20-755 C
(Filed: November 30, 2023)

```
* * * * * * * * * * * * * * * * *  *
                                   *
JOSEPH T. LYON,                    *
                                   *
            Plaintiff,             *
                                   *
    v.                             *
                                   *
THE UNITED STATES,                 *
                                   *
            Defendant.             *
                                   *
* * * * * * * * * * * * * * * * *  *
```

*Scott W. MacKay*, Law Offices of Scott W. MacKay, LLC, of Hebron, NH, for Plaintiff.

*William P. Rayel*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Deborah A. Bynum*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Acting Assistant Attorney General, all of Washington, D.C., for Defendant, and *Bernard E. Doyle*, Attorney Advisor, Office of Chief Counsel, National Guard Bureau, of Arlington, VA, of counsel.

## OPINION AND ORDER

**SOMERS**, Judge.

Plaintiff Joseph Lyon challenges the April 28, 2021, decision ("2021 Decision") of the Army Board for Correction of Military Records ("ABCMR" or "Board") denying his application to correct his military record. *See generally* ECF No. 18 ("Am. Compl."). Plaintiff contends that the Board "erroneously refused to order the correction of [his] military records to reflect his eligibility for . . . disability retired pay pursuant to 10 U.S.C. §§ 1201 and 1204, . . . by reason of his unfitting Post-Traumatic Stress Disorder ("PTSD") . . . ." *Id.* ¶ 1. Before the Court are the parties' cross-motions for judgment on the administrative record. ECF No. 34 ("Pl.'s MJAR"); ECF No. 35 ("Gov.'s MJAR"). For the following reasons, the Board's 2021 Decision is in error, and Plaintiff is entitled to judgment on the administrative record.

## BACKGROUND

A.  **Factual History**

Plaintiff's military service began November 27, 1985, as a member of the Mississippi Army National Guard. Am. Compl. ¶ 6. On September 30, 1993, after he completed officer candidate school, Plaintiff transferred to the Florida National Guard. *Id.* As a member of the National Guard, he has served on active duty multiple times, including three combat deployments. *Id* ¶ 6, 7. During his deployment to Iraq in 2003, Plaintiff was injured by the detonation of an improvised explosive device. *Id.* ¶ 8. However, he declined treatment for injuries sustained because of the explosion for fear of losing his command. *Id.* Despite his injury, Plaintiff continued to serve in the military, including full-time National Guard duty in the Active Guard/Reserve ("AGR") with an active service commitment term from December 24, 2010, to June 23, 2016. *Id.* ¶ 13.

On April 5, 2013, Florida civil officials arrested Plaintiff and charged him with possession of child pornography. *Id.* ¶ 10. Three days after his arrest, Plaintiff attempted suicide and was involuntarily committed to Emerald Coast Behavioral Health Hospital in Panama City, Florida, to receive treatment. *Id.* ¶ 11; ECF No. 22-1 at 39 ("Pl.'s Appx."). On May 25, 2013, Plaintiff underwent a psychiatric assessment and was diagnosed with chronic PTSD due to his combat deployments. Am. Compl. ¶ 11.

On May 10, 2013, Plaintiff's brigade commander, Colonel Michael A. Canzoneri, acting on behalf of the squadron commander, requested withdrawal of Plaintiff's federal recognition due to his arrest. *Id.* ¶ 14. Without informing Plaintiff of this request, Col. Canzoneri met with Plaintiff and told him that he should request release from active duty. *Id.* ¶ 12. Although Plaintiff expressed his desire to stay on active duty while he completed his behavioral health and PTSD treatments, the National Guard told that him that it had "everything it needed to cut [him] from the books very quickly." *Id.* Plaintiff submitted his request for release from active duty the same day, effective May 30, 2013. *Id.* ¶ 13.

On June 10, 2013, Plaintiff was informed by written memorandum that proceedings were underway to withdraw his federal recognition under National Guard Regulation ("NGR") 635-101. *Id.* ¶ 14. Enclosed with the memorandum was an election form that presented Plaintiff with three options: "resign as an officer of the National Guard and as a Reserve Officer of the Army in lieu of proceedings for withdrawal of Federal recognition; appear at a hearing before a board of officers; or transfer to the Retired Service, if eligible." *Id.* Plaintiff alleges that the election form he completed was "replete with scribbled cross-outs, initials, and handwritten annotations at both the retirement and resignation options" that indicate his confusion about the process and, therefore, a lack of voluntariness regarding his decision. *Id.* ¶ 15. However, Plaintiff subsequently signed, without modification, a memorandum memorializing his request to resign. *Id.* Plaintiff's resignation and separation as an officer of the Army National Guard and Reserve of the Army under other than honorable conditions became effective on October 7, 2013. *Id.* ¶ 16.

Plaintiff asserts that, had he known proceedings were already underway to withdraw his federal recognition when he made his election to resign, he would not have requested release from active duty. *Id.* ¶ 12. He also alleges that he was not informed that the National Guard was required to conduct a formal line-of-duty investigation before releasing him from the AGR, that he might have been eligible for the Retired Reserves, or that his discharge could be designated as under other than honorable conditions. *Id.* ¶¶ 18, 20; *see also* NGR 600-5.

**B.     Procedural History**

**1.     First ABCMR Decision**

About five months after his discharge, on February 13, 2014, Plaintiff contacted the Florida National Guard Inspector General to allege that his removal from AGR status and withdrawal of federal recognition did not comply with National Guard and Army regulations. Am. Compl. ¶ 17. The Inspector General issued a report on November 4, 2014, which found that the Florida Army National Guard violated multiple regulations, including regulations that required: (1) a formal line-of-duty investigation into Plaintiff's suicide attempt; (2) withholding the withdrawal of recognition until Plaintiff was medically profiled; and (3) processing Plaintiff for administrative separation while simultaneously conducting a physical disability evaluation. *Id.* ¶ 18. Based on these findings, Plaintiff filed an application with the ABCMR seeking restoration of federal recognition, restoration of active-duty status with full back pay for the duration of his erroneous administrative separation, and conversion of his separation to medical or administrative retirement with an honorable discharge due to his PTSD and traumatic brain injury diagnoses. *Id.* ¶ 20.

Following the Inspector General's findings, on June 21, 2016, the ABCMR corrected Plaintiff's records to suspend his resignation, withdrawal of federal recognition, and discharge, as well as place Plaintiff in an excess leave status effective August 1, 2013, pending further review of his corrections request. *See* AR 132–61 ("2016 Decision"). This suspension was indefinite, pending "review of his voluntary resignation in lieu of elimination for compliance with the governing Army regulatory guidance"; "his processing through the Integrated Disability Evaluation System (IDES)"; "compele[tion] of a formal line of duty investigation based on the incident that occurred on April 8, 2013"; and a "determin[ation of] his eligibility for non-regular retirement based on qualifying years of creditable service." AR 134. In the 2016 Decision, the Board further ordered that, in the event it was determined that Plaintiff should have been separated under IDES, the 2016 Decision would "serve as authority to void his administrative separation and to issue him the appropriate separation . . . with entitlement to all back pay and allowances and/or retirement pay." AR 135. However, if it was determined that Plaintiff either should not have been separated pursuant to IDES or was not eligible for retirement based on qualifying years of credible service, "the U.S. Army Human Resources Command . . . and the National Guard Bureau in concert with the Florida Army National Guard [were to] initiate appropriate action to effect [Plaintiff's] separation and discharge." *Id.*

In accordance with the 2016 Decision Plaintiff was referred to a Medical Evaluation Board ("MEB") at Fort Gordon, Georgia. Am. Compl. ¶ 26. The MEB determined that Plaintiff suffered from PTSD, lumbosacral strain, degenerative arthritis, and lumbar spine stenosis, and

that, due to these conditions, he did not meet military retention standards. *Id.* Accordingly, the MEB referred Plaintiff to a Physical Evaluation Board ("PEB"). *Id.* The PEB initiated but never completed its review. *Id.* ¶ 27. On February 5, 2020, Plaintiff received a letter that stated that the ABCMR had decided that there was no error or injustice that warranted a change to Plaintiff's resignation status in light of the reviews conducted; therefore, "[t]he Board action as described in its 21 June 2016 decision [was] . . . final and considered closed."[1] AR 185.

On June 23, 2020, Plaintiff filed a complaint in this Court contesting the merits of the Board's decision. ECF No. 1. In response, the government requested that the Court remand Plaintiff's claims to the Board so that it could: (1) "determine and explain whether Plaintiff was unfit for duty because of physical disability at the time of his July 31, 2013 release from active duty"; (2) "address . . . any other issues [Plaintiff] raises in a written submission to the ABCMR"; and (3) "determine and explain whether Plaintiff is entitled to any relief, including correction of records and retirement pay, based upon any errors or injustices found." ECF No. 5 at 8–9. Plaintiff opposed remand, arguing that the ABCMR had already determined that Plaintiff was fit for duty at the time of his release; therefore, "the issue[] [was] ripe for disposition by the court." ECF No. 8 at 1. However, the government argued that, given that an MEB had found Plaintiff's PTSD did not meet retention standards, it was in the interests of justice that the case be remanded "for a competent board, *i.e.*, the ABCMR, to make a fitness determination." ECF No. 5 at 7.

Judge Bruggink, who was then assigned to the case, issued an order to remand Plaintiff's case to the ABCMR. ECF No. 8. Therein, Judge Bruggink explained that "given [the government]'s recommendation that a fitness determination be made by a competent board, we agree that a remand is appropriate and likely to save time and resources later." *Id.* at 2. On remand, the ABCMR was instructed as follows:

   a. determine and explain whether [Plaintiff] was unfit for duty because of physical disability at the time of his July 31, 2013 release from active duty in Active Guard/Reserve status;

   b. address in its decision any other issues [Plaintiff] raises in a written submission to the ABCMR that he submits within 30 days of the remand order, and consider any evidence or arguments in [Plaintiff]'s submission to the ABCMR;[] and

   c. determine and explain whether [Plaintiff] is entitled to any relief, including correction of records and retirement pay, based upon any errors or injustices found.

*Id*.

### 2. ABCMR's Remand Decision

On April 28, 2021, the ABCMR issued its record of proceedings on remand. The Board found that, due to his PTSD, Plaintiff was unfit for active duty when he was released on July 31,

---

[1]This letter and decision, however, were not actually approved by the ABCMR; rather, they are signed by the Director of the ABCMR.

4

2013.  AR 1, 70.  However, the Board also determined that no further correction to Plaintiff's military record was warranted because Plaintiff voluntarily resigned, and the Army's acceptance of that voluntary resignation was appropriate in light of his misconduct.  AR 71.  This recommendation was then approved by the Deputy Assistant Secretary of the Army for Review Boards ("DASA-RB").  AR 2–3.

Following the Board's 2021 Decision, Plaintiff amended his complaint to assert three grounds for relief.  Count I sought a longevity retirement pursuant to 10 U.S.C. § 7311, because, according to Plaintiff, had he not been discharged, he would have accumulated enough service to be eligible for voluntary retirement.  Am. Compl. ¶¶ 57–61.  Count II sought disability retirement pursuant to 10 U.S.C. §§ 1201 and 1204.  *Id.* ¶¶ 62–66.  Finally, Count III sought to change Plaintiff's discharge status from other than honorable to honorable.  *Id.* ¶¶ 67–73.

### 3. Government's Motion to Dismiss

In response to the amended complaint, the government filed a Motion for Partial Dismissal and Motion for a Voluntary Remand and Stay.  ECF No. 21 ("Gov.'s Mot. Dismiss").  In that motion, the government argued that Count I should be dismissed because: (1) 10 U.S.C. § 7311 is not a money-mandating statute; (2) the statute of limitations has run on Plaintiff's claim; and (3) Plaintiff fails to state a claim because it is undisputed that Plaintiff was medically unfit for duty at the date of discharge.  *See generally id.*  On June 22, 2022, this Court issued an opinion granting the government's motion as to Count I, denying it as to Count II, and reserving ruling as to Count III.  *See generally Lyon v. United States*, 161 Fed. Cl. 88 (2022).  Thereafter, the parties filed cross-motions for judgment on the administrative record.  ECF No. 34, 35.

## DISCUSSION

### A.   Standard of Review

The Court may grant a motion for judgment on the administrative record if it determines that a party has met its burden of proof based on the evidence in the record in light of the disputed and undisputed facts.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  In considering a motion for judgment on the administrative record in a military pay case, the Court "will not disturb the decision of [a correction board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)).  It is well settled that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."  *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted).  Furthermore, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."  *Dodson v. Dep't of the Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed.Cir.1992)).  Thus, a servicemember "who has sought relief from a correction board is bound by its decision unless he can demonstrate . . . that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was

unsupported by substantial evidence." *Id.* at 1204–05 (internal quotations omitted) (citing cases).

**B.      Analysis**

In its previous ruling in this case, the Court indicated what it suspected the ultimate outcome on Plaintiff's claims would be: Plaintiff would be entitled to judgment on the administrative record because the Board's 2016 Decision entitled him to a correction of his military record based on the determination in the Board's 2021 Decision that Plaintiff was unfit for duty at the time he was discharged and met the criteria for medical retirement. *See Lyon*, 161 Fed. Cl. at 101–103. However, in its previous ruling, the Court refrained from granting that relief because it did not have the benefit of cross-motions for judgment on the administrative record pending before it. *Id.* at 101. Now, with the briefing on such motions directly before it, the Court confirms what it suspected when it previously ruled in this case: Plaintiff is entitled to disability retirement.

Plaintiff's entitlement to disability retirement is ultimately the result of the Board's 2016 Decision. In 2016, the Board examined Plaintiff's request for correction of his military record and was faced with a conundrum. Three years prior to the 2016 Decision, Plaintiff had been improperly separated from the military. According to the Board,

> [t]he applicant received a diagnosis of PTSD prior to issuance of the orders amending his active duty separation date. However, there is no evidence of record that shows the applicant was referred to the IDES and processed simultaneously for administrative separation and physical disability evaluation. . . .
>
> There is also no evidence of record that the appropriate separation authority approved the applicant's resignation and separation from active duty and as a member of the AGR (Title 32) prior to 31 July 2013. In this regard, the applicant should have been retained on active duty as a member of the AGR program (Title 32) pending a decision by the appropriate separation authority. . . . The NGB Form 22 appears to have been prepared for the purpose of discharging the applicant from the FLARNG, effective 7 October 2013; however, it is not authenticated by an authorized official.

AR 36–37 (emphasis omitted).

The question before the Board in 2016, therefore, was how to deal with Plaintiff's improper separation. The first step the Board took to correct the improper separation was to "suspend his resignation as a Reserve officer of the Army, withdrawal of Federal recognition, discharge from the Army National Guard of the United States, . . . discharge from the Florida Army National Guard[,] and place him in an excess leave status effective 1 August 2013 for an indefinite period . . . ." AR 134. Once placed in the excess leave status, the improper separation issue was temporarily dealt with, but the Board still needed to determine how to permanently

6

separate Plaintiff from the military.² To address this question, the Board identified two possible avenues for permanently separating Plaintiff.

First, the Board found that Plaintiff could be placed on the permanent retired list if it was determined that he was eligible. AR 135. According to the Board, his eligibility for the permanent retired list depended on whether Plaintiff was either permanently disabled under the IDES or had qualifying years of creditable service for non-disability retirement. *Id.* Second, if Plaintiff was determined to be ineligible for the permanent retired list, "the U.S. Army Human Resources Command, Fort Knox, KY, and the National Guard Bureau in concert with the Florida Army National Guard [were to] initiate appropriate action to effect his separation and discharge." *Id.* There is no mention in the instructions for finding an avenue for separating Plaintiff by dual processing him for separation pursuant to Army Regulation 635-40 ¶ 4-4 and Army Regulation 600-8-24 ¶ 1-24(b).

In order to determine whether Plaintiff was eligible for the permanent retired list, the Board directed Army Human Resources Command, the National Guard Bureau, and/or the Florida Army National Guard to "process[] [Plaintiff] through the Integrated Disability Evaluation System (IDES)," "complete a formal line of duty investigation based on the incident that occurred on 8 April 2013," and "determine [Plaintiff's] eligibility for non-regular retirement based on qualifying years of creditable service." AR 134. Regarding disability retirement, the Board instructed that, "[s]hould a determination be made that the applicant should have been separated under the IDES, these proceedings will serve as the authority to void his administrative separation and to issue him the appropriate separation retroactive to his original separation date, with entitlement to all back pay and allowances and/or retired pay, less any entitlements already received." AR 135. Moreover, if Plaintiff was "to be placed on the permanent retired list based on permanent disability or qualifying creditable service, the Army Review Boards Agency . . . [was to] review [Plaintiff's] military service records for a determination of his retired grade of rank . . . retroactive to 1 August 2013." *Id.* Conversely, in the event that Plaintiff was determined to be ineligible for the permanent retired list because he was "not found medically unfit for further military service and he is not authorized non-disability retirement, the U.S. Army Human Resources Command . . . and the National Guard Bureau in concert with the Florida Army National Guard [would] initiate appropriate action to effect his separation and discharge." *Id.* (emphasis omitted). Again, there is no mention of dual processing Plaintiff for separation.

In short, the 2016 Decision set up a process for determining how to separate Plaintiff from the Army. This process was *sui generis* to Plaintiff, and appears to have been created because during the course of the Army's original attempt to separate Plaintiff, no "appropriate separation authority approved [Plaintiff's] resignation and separation from active duty and as a member of the AGR." AR 161. As part of this process, if Plaintiff was determined to be eligible for disability retirement, he was to be given disability retirement. If not, then the Army was to determine his eligibility for a non-disability retirement based on years of creditable service.

---

² The Board rejected Plaintiff's request to be reinstated as an officer: "the Board recommends denial of so much of the application that pertains to reinstatement as a Reserve officer of the Army and extension of Federal recognition in the Army Nation Guard of the United States, Active Guard/Reserve program, and the Florida Army National Guard . . . ." AR 135.

Finally, if he was entitled to *neither* disability *nor* non-disability retirement, the Board essentially punted the matter to the Army Human Resources Command and the National Guard Bureau to work with the Florida Army National Guard to initiate some other appropriate action to separate and discharge Plaintiff from the Army. Although these seem to the Court to be relatively simple instructions, somehow over the next several years the Board largely ignored its 2016 Decision in its subsequent actions.

Initially, the Board's instructions were followed: Plaintiff went to an MEB, which determined that he suffered from PTSD that did not meet military retention standards and was incurred while Plaintiff was entitled to base pay. AR 445–51. Accordingly, the MEB referred Plaintiff to a PEB, which initiated but never completed review. Rather than allowing the PEB to complete its process, on February 5, 2020, the Board's Director concluded that "[r]eviews conducted in accordance with the approved Board recommendation found no error or injustice that warrant a change to the applicant's separation. The Board action as described in its 21 June 2016 decision is now final and considered closed." AR 185. This closure of Plaintiff's claim, seemingly without approval of the Board, resulted in the instant case.

After Plaintiff filed suit in this Court, the case was remanded to the Board to "determine and explain whether [Plaintiff] was unfit for duty because of physical disability at the time of his July 31, 2013 release from active duty in Active Guard/Reserve status." ECF No. 8 at 2. The Board was also to "determine and explain whether [Plaintiff] is entitled to any relief, including correction of records and retirement pay, based upon any errors or injustices found." *Id.* This remand resulted in the Board's 2021 Decision. In that decision, the Board concluded that "a preponderance of evidence reflects [Plaintiff] was unfit for duty because of PTSD at the time of his 31 July 2013 release from active duty." AR 70. The Board also concluded that Plaintiff met the criteria for medical retirement. *See* AR 71–72. However, the Board further determined that "a greater weight of the evidence supported the course of action to eliminate the applicant by accepting his resignation rather than medically retiring him for physical disability." AR 71. The Board then referred its recommendation to the DASA-RB to determine whether Plaintiff should be given medical retirement or be separated by virtue of Plaintiff's original misconduct resignation. AR 72. Upon referral from the Board, the DASA-RB determined that "sufficient evidence exists indicating that [Plaintiff] actually did engage in misconduct and that his behavior warranted the Army's decision to accept his resignation and withdraw Federal Recognition. I find no change to [Plaintiff's] discharge status or discharge characterization is warranted in the interest of justice." AR 2.

The Board's 2021 Decision (and the DASA-RB's acceptance of it) was, however, in error. Once the Board determined that Plaintiff was medically unfit for duty and entitled to medical retirement, separating Plaintiff pursuant to his previous (suspended) resignation was contrary to, and less favorable than, the correction made in the Board's 2016 Decision. Recall, the 2016 Board decision decided that, if it was determined that Plaintiff was medically unfit for duty, then the 2016 Decision was to "serve as the authority to void his administrative separation and to issue him the appropriate separation retroactive to his original separation date, with entitlement to all back pay and allowances . . . ." AR 135. Then, in its 2021 Decision, the Board determined that "a preponderance of evidence reflects [Plaintiff] was unfit for duty because of PTSD at the time of his 31 July 2013 release from active duty," AR 70, and presented to the

8

DASA-RB the decision of whether to medically retire Plaintiff or separate him based on his previous resignation, AR 72. Once that medical retirement eligibility determination was made, under the 2016 Decision, Plaintiff was entitled to disability retirement. But rather than follow that mandate, the Board, with the approval of the DASA-RB, decided in 2021 to discharge Plaintiff under his original (but suspended) resignation. This was impermissible.

Corrections boards are not permitted to correct a servicemember's record unfavorably. Although a corrections board may choose not to grant a servicemember the relief requested, "[i]t is clear the statute only confers on the Secretary [acting through correction boards] the power to correct records *in favor of a serviceman and never against him*." *Doyle v. United States*, 220 Ct. Cl. 285, 311 (1979) (emphasis added). In other words, a corrections board "can only exercise its discretion for the *benefit* of the individual member." *Wolfe v. Marsh*, 835 F.2d 354, 358 (D.C. Cir. 1987) (citing *Doyle*, 220 Ct. Cl. at 311) (emphasis added). Here, the Board acted to Plaintiff's detriment—it denied him the effect, under the 2016 Decision, of a finding that he was entitled to medical retirement. The 2021 Board may have disagreed with the 2016 Decision; however, as the Court of Claims explained decades ago, military correction boards "were established for the purpose only of reviewing, on application of the military personnel, a military record to correct errors or injustices against such personnel and *not to review and reverse decisions of other established boards favorable to such personnel*." *Friedman v. United States*, 141 Ct. Cl. 239, 252–53 (1958) (emphasis added). In short, once the Board determined in 2021 that Plaintiff was entitled to medical retirement, its only option was to grant Plaintiff medical retirement. This is what the 2016 Decision instructed. By instead accepting Plaintiff's suspended misconduct resignation (and dishonorably discharging him), the Board reversed a favorable decision. However, *Friedman* and its progeny prohibit this outcome.

In its opposition to Plaintiff's MJAR, the government rejects this conclusion. As the government argues, the Board in 2016 merely prescribed that Plaintiff was supposed to be dual processed for separation under Army regulations to make up for the Army's failure to properly dual process Plaintiff when he was originally separated. According to the government, the 2016 Decision "did not preclude the application of Army Regulation 635-40 ¶ 4-4 and Army Regulation 600-8-24 ¶ 1-24(b) in the event that [Plaintiff] was found unfit for duty, and it did not preclude the Acting DASA-RB from determining that separation for misconduct was the more appropriate disposition . . . ." Gov.'s MJAR at 25. The government further asserts that "[i]n issuing its 2016 decision, the ABCMR presumably expected that the appropriate authorities would implement its decision by following applicable law in determining an appropriate separation for [Plaintiff], including Army Regulation 635-40 ¶ 4-4 and Army Regulation 600-8-24 ¶ 1-24(b)." *Id.* at 20. Thus, the government concludes that "after making the unfitness determination, the ABCMR rationally referred the matter to the DASA-RB, pursuant to Army Regulation 635-40 ¶ 4-4 and Army Regulation 600-8-24 ¶ 1-24(b), for a determination of the appropriate disposition of [Plaintiff's] case." ECF No. 39 at 4.

The problem with this rationale for separating Plaintiff from the Army is that it is inconsistent with the explicit instructions contained in the 2016 Decision for how Plaintiff's separation was to proceed. First, the Court would have expected from reading the government's argument that when it turned to the 2016 Decision it would have found at least some reference to Army Regulation 635-40 ¶ 4-4 and Army Regulation 600-8-24 ¶ 1-24(b) in the instructions for

processing of Plaintiff for separation. Instead, the section of the 2016 Decision that sets forth how Plaintiff's separation processing is to proceed references those regulations, which are the bedrock of the government's argument, exactly *zero* times. This non-mention of the regulations, of course, makes perfect sense because the 2016 Decision clearly does not contemplate that Plaintiff is to be dual processed for separation pursuant to Army Regulation 635-40 ¶ 4-4 and Army Regulation 600-8-24 ¶ 1-24(b).

Rather, as described above, the 2016 Decision instructs that Plaintiff shall be evaluated for disability retirement (i.e., "process[ed] through the Integrated Disability Evaluation System") and for non-regular retirement based on qualifying years of credible service. AR 134. And then, if it was determined that Plaintiff should have been separated under IDES, the 2016 Decision was to serve as the authority to give him disability retirement. AR 135 ("Should a determination be made that the applicant should have been separated under IDES, these proceedings will serve as authority to void his administrative separation and to issue him the appropriate separation retroactive to his original separation date, with entitlement to all back pay and allowances and/or retired pay."). Alternatively, the Army could have separated Plaintiff based on qualifying credible service based on the 2016 Decision. *Id.* Finally, if Plaintiff was neither eligible for disability retirement pursuant to IDES nor non-disability retirement, "the U.S. Army Human Resources Command, Fort Knox, KY, and the National Guard Bureau in concert with the Florida Army National Guard [were to] initiate appropriate action to effect his separation and discharge." *Id.* However, *nowhere* in the 2016 Decision's instructions for processing Plaintiff for separation did it prescribe separating Plaintiff via Army Regulation 635-40 ¶ 4-4 and Army Regulation 600-8-24 ¶ 1-24(b). Rather, while those regulations are both referenced later in the 2016 Decision, that reference is with regard to how those regulations were improperly applied when Plaintiff was originally improperly separated from the Army.

Moreover, not only is the government's argument inconsistent with the natural reading of the 2016 Decision, it makes little sense given the instructions. If the 2016 Decision was simply an instruction to dual-process Plaintiff, then the instructions in the 2016 Decision to determine whether Plaintiff was eligible for retirement based on years of credible service and for various Army entities to work in concert to "initiate appropriate action to effect his separation and discharge" in the event that Plaintiff was not entitled to either disability or credible service retirement would be non-sensical. *Id.* Dual processing Plaintiff would have resulted in his separation and discharge from the Army—either by being medically retired or through his original (but suspended) misconduct resignation. If dual processing necessarily would have resulted in his separation, then there would be absolutely no need for the further instructions to determine Plaintiff's eligibility for a credible service retirement or separation by other "appropriate action." *Id.* One way or the other, at the end of Plaintiff being dual processed, as the government argues was the mandate of the 2016 Decision, Plaintiff would have been out of the military, making the two additional steps included in the 2016 Decision's instruction surplusage. The Court presumes that the 2016 Board would have been aware of this and thus will not read its 2016 Decision as containing extra, unnecessary steps to effect Plaintiff's separation and discharge.

The government's entire argument is based on the presumption that the Board intended for the dual processing encapsulated in Army Regulation 635-40 ¶ 4-4 and Army Regulation

600-8-24 ¶ 1-24(b) to be the method of reconsideration for Plaintiff's separation. That presumption, however, is not supported by the text of the 2016 Decision. Instead, as discussed above, the 2016 Decision set up a distinct, alternative process for considering how to effect Plaintiff's separation from the Army. This choice is logical given the procedural errors in the Army's first attempt to separate Plaintiff and the three years that had passed since his original separation processing began on June 10, 2013. Although the government asserts that this alternative process would have been contrary to law and thus must be an incorrect reading, the government's assertion, supported only by citation to Army Regulation 635-40 ¶ 4-4 and Army Regulation 600-8-24 ¶ 1-24(b), is misplaced. Corrections boards have broad powers to correct errors and remove injustices from servicemembers' records. *See* 10 U.S.C. § 1552. This broad power includes the power to determine whether a servicemember is entitled to medical retirement. *Chambers v. United States*, 417 F.3d 1218, 1225 (Fed. Cir. 2005). Nothing in the cited regulations precludes this. The Court does not know exactly what in these regulations the government is referring to, but it will assume that a paragraph that the government failed to cite is the basis for the government's argument: Army Regulation 600-8-24 ¶ 1-24(a). That paragraph provides that "[a] commissioned or warrant officer under investigation for an offense chargeable under the Uniform Code of Military Justice (UCMJ) that could result in dismissal or punitive discharge may not be referred for or continue disability processing . . . ." unless certain conditions apply. But Plaintiff, three years after being separated and discharged from the Army, surely was no longer "under investigation for an offense chargeable under the Uniform Code of Military Justice." *Id.* Thus, to any extent that this uncited paragraph could be read to limit the Board's authority to grant Plaintiff medical discharge, clearly Plaintiff no longer fell under this restrictive language in Army Regulation 600-8-24 ¶ 1-24(a).

In sum, the 2016 Decision set up a process for separating Plaintiff from the Army. Although the Army started to follow that process, it was not completed until the Board's 2021 Decision. Once the 2021 Board determined Plaintiff was entitled to medical retirement, the process prescribed by the 2016 Decision was over, and Plaintiff was entitled to a further correction of his military record. Accordingly, because the separation effected by the 2021 Decision was less favorable to Plaintiff than the separation contemplated in the 2016 Decision, Plaintiff is entitled to judgment on the administrative record correcting his military records to reflect that he is entitled to medical retirement for PTSD.

## CONCLUSION

For the reasons stated above, the Court **GRANTS-IN-PART**[3] Plaintiff's motion for judgment on the administrative record and **DENIES** the government's cross-motion for judgment on the administrative record and the government's motion to remand the Board's voluntariness determination. The case is hereby **REMANDED** to the Department of the Army (acting by and through the Army Board for the Correction of Military Records) to correct Plaintiff's military record consistent with this opinion. Accordingly, pursuant to the Board's 2016 Decision, its determination in the 2021 Decision that Plaintiff is entitled to disability retirement, and the Department of Veterans Affairs' determination evaluating Plaintiff's PTSD

---

[3] Plaintiff asserted two additional grounds in his MJAR for voiding his administrative separation. As those grounds, if successful, would still result in medical retirement, the Court does not need to address them to give Plaintiff the relief he seeks.

related disability at 70 percent, AR 495–500,[4] the Board shall make all necessary corrections to Plaintiff's military record to reflect his entitlement to disability retirement and ensure that:

1. Plaintiff's "administrative separation [is voided] and [he is] issue[d] the appropriate separation retroactive to his original separation date, with entitlement to all back pay and allowances and/or retired pay, less any entitlements already received." AR 135.

2. "[T]he Army Review Boards Agency, U.S. Army Grade Determination Review Board, Arlington, VA, [reviews Plaintiff's] military service records for a determination of his retired grade of rank. (The effective date of any such retirement to be retroactive to 1 August 2013.)." AR 135.

Furthermore, the Defense Finance and Accounting Service ("DFAS") **SHALL** calculate the sum owed to Plaintiff, consistent with his corrected record, for the purpose of this Court's ultimately entering final judgment. *See Rogers v. United States*, 26 Cl. Ct. 1023, 1025 (1992) (describing the process, pursuant to 28 U.S.C. § 2507, of ordering an agency to calculate damages in a military pay case); *Laningham v. United States*, 30 Fed. Cl. 296, 316 (1994) (same). Moreover, notwithstanding RCFC 52.2(b)(2), counsel of record for the United States **SHALL** provide a copy of this order to agency counsel and the Board, which shall constitute service pursuant to that rule.

The Board shall issue an order correcting Plaintiff's records in the manner described above, and DFAS shall provide the required calculation (either directly or through the Board), on or before **January 31, 2024**. The government shall file a status report on or before **January 3, 2024**, informing the Court of the progress of the remand proceeding. In the interim, further proceedings in this case are hereby **STAYED**.

Upon completion of the remand, the Board and DFAS (either directly or through the Board) shall promptly forward by email the correction order and the required calculation to Plaintiff's counsel and counsel for the government. The Board shall also forward a copy of these actions to the Clerk of the Court in accordance with RCFC 52.2(d), which the Board may do via the government's counsel of record. Within **twenty days** of that filing, the parties **SHALL** file a joint status report indicating their respective positions on whether the actions taken by the Board and DFAS afford a satisfactory basis for disposition of the case, or whether further proceedings before the Court are required and, if so, the nature of such proceedings. *See* RCFC 52.2(e)(1). If no further proceedings are required at that point, the Court will enter final judgment.

**IT IS SO ORDERED**.

---

[4] *See Keltner v. United States*, 165 Fed. Cl. 484, 511–15 (2023) ("[T]he VA performs the medical exam and decides the rating, and the military decides whether the disability renders the service member unfit."); *accord Kaster v. United States*, 158 Fed. Cl. 86, 90 n.2 (2022) ("[T]he [IDES] [is] a joint medical evaluation process which combines the disability examinations performed by DoD and the VA and requires the DoD to apply the VA's disability rating determinations for all conditions the Navy determines to be unfitting.").

<u>s/ Zachary N. Somers</u>  
ZACHARY N. SOMERS  
Judge